**STATE of Minnesota, Respondent,**

v.

**David Lee BROOKS, Appellant.**

No. A03–2050.

Court of Appeals of Minnesota.

Dec. 28, 2004.

Mike Hatch, Attorney General, James B. Early, Assistant Attorney General, St. Paul, MN; and Raymond F. Schmitz, Olmsted County Attorney, Rochester, MN, for respondent.

John M. Stuart, State Public Defender, Jodie L. Carlson, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by KALITOWSKI, Presiding Judge; WRIGHT, Judge; and FORSBERG, Judge.*

## OPINION

KALITOWSKI, Judge.

Appellant David Brooks challenges his convictions and sentence, arguing that (1) his sentence was invalid because the district court, rather than a jury, found that appellant's criminal history score included a custody status point; (2) the prosecutor engaged in prejudicial misconduct; and (3)

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

the evidence was insufficient to sustain his convictions.

## FACTS

In May 2001, appellant attacked his girlfriend. He was subsequently charged with and convicted of fifth-degree felony assault. This court affirmed the conviction in *State v. Brooks,* No. C2–02–1434, 2003 WL 22039323 (Minn.App. Sept. 2, 2003). In February 2002, the day before appellant's girlfriend was scheduled to testify at the trial on the May 2001 assault, appellant went to the apartment he shared with his girlfriend and punched her in the mouth. Later that night, appellant broke through a locked door in the apartment, damaged property, and threatened to harm his girlfriend if he was sent to prison. Appellant was charged with another count of fifth-degree felony assault and one count of tampering with a witness. Following a bench trial, the district court found appellant guilty of both counts in March 2003.

In September 2003, the district court sentenced appellant for the assault and witness-tampering convictions. The district court reviewed sentencing worksheets and found: (1) at the time of sentencing for the severity-level four assault conviction, appellant had six criminal history points, one of which was a custody status point; and (2) at the time of sentencing for the severity-level five witness-tampering conviction, appellant had seven criminal history points, including the custody status point and the point for the previous assault conviction. The district court sentenced appellant to the presumptive 30–month prison sentence for the assault conviction, and 51 months for the witness-tampering conviction. *See* Minn. Sent. Guidelines IV. (2003). The witness-tampering sentence included a three-month enhancement based on appellant's custody status point.

*See* Minn. Sent. Guidelines II.B.2. (calling for three-month enhancement for a custody status point when the defendant's criminal history score is in the far right-hand column of the sentencing grid before the custody status point is added).

## ISSUES

1. Were appellant's Sixth Amendment rights violated when the district court, rather than the jury, determined that appellant's criminal history score included one custody status point?

2. Did the prosecutor engage in prejudicial misconduct?

3. Was the evidence sufficient to support appellant's convictions?

## ANALYSIS

### I.

■ Appellant claims that his sentence was constitutionally invalid because the district court, rather than a jury, made the finding that appellant's criminal history score included a custody status point. Relying on *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), appellant argues that the district court engaged in judicial fact-finding in violation of his right to have a jury determine every fact legally essential to his sentence. Appellant contends that his sentence must be reduced to the presumptive guidelines sentence calculated without the custody status point, or vacated and remanded for resentencing consistent with *Blakely.* We disagree.

In *Blakely,* the United States Supreme Court examined the rule announced in *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000). *Blakely,* —— U.S. at ——, 124 S.Ct. at 2536 (quoting *Apprendi,* 530 U.S. at 490, 120 S.Ct. at 2362–63). In *Apprendi,* the Court held that the Sixth Amend-

ment to the United States Constitution requires that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490, 120 S.Ct. at 2362–63. The Court concluded that the prescribed statutory maximum means "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely,* —— U.S. at ——, 124 S.Ct. at 2537.

In *State v. Conger,* 687 N.W.2d 639 (Minn.App.2004), this court held that Minnesota's sentencing guidelines are subject to the analysis set forth in *Blakely.* The *Conger* court stated:

> [U]nder the Minnesota sentencing procedures, the applicable presumptive, fixed sentence established by the Sentencing Guidelines Commission is the maximum sentence that a judge may impose without finding facts that support a departure, and a judge who imposes an upward durational departure must do so in a manner that complies with the Sixth Amendment to the United States Constitution as explained in *Blakely.*

*Id.* at 644. The *Conger* court held that the district court's upward durational departure did not comply with the Sixth Amendment to the United States Constitution because the departure was based on the district court's independent findings of aggravating factors, rather than facts admitted by the defendant in his guilty plea. *Id.* at 646.

Here, unlike *Conger,* the district court did not make independent findings in support of a durational departure that increased appellant's penalty beyond the prescribed statutory maximum. Rather, the district court imposed the presumptive sentence under the guidelines based on appellant's criminal history score and the severity level of appellant's offenses. The district court imposed the three-month enhancement for appellant's custody status point as called for in the guidelines. The guidelines state:

> An additional three months shall be added to the duration of the appropriate cell time which then becomes the presumptive duration when:
>
> a. a custody status point is assigned; and
>
> b. the criminal history points that accrue to the offender without the addition of the custody status point places the offender in the far right hand column of the Sentencing Guidelines Grid.

Minn. Sent. Guidelines II.B.2.

We conclude that the determination of appellant's criminal history score, including notice of a custody status point, is analogous to *Blakely's* exception for the "fact of a prior conviction." *Blakely,* —— U.S. at ——, 124 S.Ct. at 2536 (quotation omitted). Like the fact of a prior conviction, custody status points are established by the court's own records. In addition, custody status points are based on the fact that a person has one or more prior convictions. Moreover, the concept of a "presumptive sentence" is meaningless without a criminal history score, which includes status points. And a jury's verdict does not determine that score. *State v. Hanf,* 687 N.W.2d 659, 664 (Minn.App.2004). Thus, we conclude that no purpose would be served by requiring that a jury make a finding of fact regarding the existence of a custody status point, and that *Blakely* must be construed as recognizing that a jury need not make such a determination.

Because *Blakely* does not mandate that a jury find, or a defendant admit, the

existence of a custody status point, we conclude that the district court did not violate appellant's Sixth Amendment rights by finding that appellant's criminal history score included a custody status point.

## II.

■ Appellant argues that his convictions for fifth-degree felony assault and tampering with a witness must be reversed because the prosecutor engaged in serious and prejudicial misconduct throughout the trial. We disagree.

■ In reviewing claims of prosecutorial misconduct, we will reverse only if the misconduct, when considered in light of the whole trial, was so serious and prejudicial that it impaired the defendant's right to a fair trial. *State v. Johnson*, 616 N.W.2d 720, 727–28 (Minn.2000). "Typically, the failure to object to a prosecutor's statement forfeits a defendant's right to have the issue considered on appeal." *State v. Sanders*, 598 N.W.2d 650, 656 (Minn.1999) (quoting *State v. Atkins*, 543 N.W.2d 642, 647 (Minn.1996)) (quotation marks omitted). We have discretion to consider issues not objected to at trial, however, if there is plain error affecting substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998). An error affects substantial rights "if the error was prejudicial and affected the outcome of the case." *Id.* at 741.

Appellant asserts that the prosecutor engaged in misconduct by (1) offering his personal opinion on the truthfulness of testimony; (2) eliciting improper vouching testimony; (3) injecting emotion into the case; and (4) improperly using inadmissible hearsay under the guise of impeachment. We reject appellant's contention that the prosecutor's alleged misconduct was either serious or pervasive. And we conclude that there is no reasonable doubt that the actions of the prosecutor did not affect the verdict in this bench trial. Therefore, because appellant failed to object during trial and has not established plain error, he has waived his right to have these issues reviewed on appeal.

## III.

■ When considering a sufficiency of the evidence claim, we examine the evidence in a light most favorable to the verdict to decide "whether the facts in the record and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *Davis v. State*, 595 N.W.2d 520, 525 (Minn.1999) (quoting *State v. Moore*, 481 N.W.2d 355, 360 (Minn.1992)). "We review criminal bench trials the same as jury trials when determining whether the evidence is sufficient to sustain convictions." *Id.* (quoting *State v. Hough*, 585 N.W.2d 393, 396 (Minn.1998)).

Appellant argues that the district court's decision was based on inadmissible testimony of the victim and an eyewitness and that the remaining evidence was insufficient to support the convictions. But as discussed above, by failing to make the proper objections at trial, appellant waived his right to have the admissibility of the evidence considered on appeal. We conclude that based on the facts in the record and the legitimate inferences drawn from them, including the statements of the victim, the district court reasonably concluded beyond a reasonable doubt that the defendant was guilty of fifth-degree felony assault and tampering with a witness.

## DECISION

The district court did not violate appellant's Sixth Amendment rights by deter-

mining that appellant's criminal history score included a custody status point. Appellant waived evidentiary objections by failing to object at trial on the grounds raised on appeal and the evidence was sufficient to support the convictions.

**Affirmed.**