*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1028**

State of Minnesota,
Respondent,

vs.

Jeffrey Alan Truelson,
Appellant.

**Filed April 13, 2015
Affirmed
Chutich, Judge**

Meeker County District Court
File Nos.   47-CR-13-727
47-CR-13-747
47-CR-14-109

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Anthony D. Spector, Meeker County Attorney, Brandi L. Schiefelbein, Assistant County Attorney, Litchfield, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Presiding Judge; Rodenberg, Judge; and Chutich, Judge.

UNPUBLISHED OPINION

**CHUTICH**, Judge

Appellant Jeffrey Truelson pleaded guilty to violating predatory offender registration requirements, violating a no-contact order, and interfering with a 911 call. He now challenges the district court's imposition of a ten-year conditional-release term and imposition of costs for each of the three cases to which he pleaded guilty. Because the district court properly imposed the conditional-release term and costs, we affirm.

**FACTS**

The facts of this case are undisputed. Truelson committed several crimes during the spring and summer of 2013: (1) As a predatory offender, he drove a car without properly registering it with law enforcement; (2) he contacted someone in violation of a no-contact order; and (3) he assaulted another person and stopped her from calling 911.

As a result of this conduct, the state filed three separate complaints against Truelson. On August 29, 2013, the state charged Truelson with felony violation of a no-contact order. On September 9, 2013, the state charged Truelson with two counts of felony domestic assault and gross misdemeanor interference with a 911 call. On February 13, 2014, the state charged Truelson with failure to register his car.

Truelson pleaded guilty to violating a no-contact order, interfering with a 911 call, and failing to register a car. The plea agreement called for sentences under the presumptive guidelines to run concurrently, but did not mention conditional release or court costs. The state agreed to dismiss two assault charges as part of the plea agreement. At the plea hearing, Truelson admitted the underlying conduct for each offense. He also

2

admitted to being a predatory offender but never admitted that he was a designated risk-level-III offender. The district court told Truelson at the plea hearing that he would be "subject to whatever the recommendations of [the pre-sentence investigative report]" were and that he would be sentenced according to the presumptive guidelines in conjunction with that report. Truelson agreed to the plea knowing that the terms of his sentence were not fixed.

The district court ordered a pre-sentence investigation report from the Minnesota Department of Corrections. The department of correction's report included information that Truelson was a risk-level-III offender. The district court sentenced Truelson to 39 months in prison for failing to register his car, plus a statutorily required ten-year conditional-release term based on his sex-offender status. The district court imposed a concurrent 30-month sentence on the felony no-contact order violation and a concurrent one-year sentence on the gross misdemeanor interference with a 911 call. Truelson did not object to the sentence. Finally, the district court imposed a $75 surcharge, a $15 library fee, and a $75 public defender co-payment for each of the three complaints to which Truelson pleaded guilty. Truelson appeals.

## D E C I S I O N

### I.

Truelson pleaded guilty for failing to comply with registration requirements as a predatory offender. A pre-sentence investigation report showed that Truelson was a risk-level-III offender; accordingly, the district court imposed a ten-year conditional-release term. *See* Minn. Stat. § 243.166, subd. 5a (2014). Truelson did not object to the sentence

at the hearing. On appeal, he now claims that the conditional-release term violated his Sixth Amendment rights because he did not admit to being a risk-level-III offender and a jury did not make a finding that he was a risk-level-III offender. This court reviews questions of constitutional law de novo. *State v. Bobo*, 770 N.W.2d 129, 139 (Minn. 2009).

The Sixth Amendment guarantees a defendant "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 477, 120 S. Ct. 2348, 2356 (2000) (alteration in original) (quotation omitted). "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S. Ct. at 2362–63.

In Minnesota, "the presumptive sentence prescribed by the Minnesota Sentencing Guidelines is the maximum sentence a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the defendant." *State v. Shattuck*, 704 N.W.2d 131, 141 (Minn. 2005) (quotation omitted). The Minnesota Supreme Court has expanded the prior-conviction exception from *Apprendi* to include a defendant's custody status, such as probation status; accordingly, the jury does not have to make a finding of fact on custody status before the district court may impose a sentence. *State v. Allen*, 706 N.W.2d 40, 47–48 (Minn. 2005).

The issue presented here has been previously addressed by this court. In *State v. Ge Her*, 843 N.W.2d 590 (Minn. App. 2014), *review granted* (Minn. Apr. 29, 2014), this

court addressed the identical issue of imposing a conditional-release term for registration violations without a jury finding on the offender's risk level. Section 243.166 sets a mandatory punishment when a person is convicted of failing to register and is a risk-level-III offender: "Notwithstanding the statutory maximum sentence otherwise applicable to the offense or any provision of the sentencing guidelines . . . the court shall provide that after the person has been released from prison, the commissioner shall place the person on conditional release for ten years." Minn. Stat. § 243.166, subd. 5a. Based on this statute, the district court in *Ge Her* sentenced the defendant to a statutorily mandated ten-year conditional-release term because of his status as a risk-level-III offender at the time of the registration violation. *Ge Her*, 843 N.W.2d at 592.

The defendant appealed, arguing that the sentence violated his Sixth Amendment right to a jury trial. *See id.* We held that a conditional-release term imposed under section 243.166, subdivision 5a, is part of the statutory-maximum sentence for risk-level-III offenders convicted of violating registration requirements. *Id.* at 594. We further held that because determination of the risk level of a sexual offender is analogous to determinations of a prior conviction or probation status, which the district court alone may do, an offender's risk level is *not* a fact that is constitutionally required to be found by a jury. *Id.* at 595–96.

Here, the district court determined that Truelson was a risk-level-III offender through a pre-sentence investigation report and records of the department of corrections. The ten-year conditional-release term is part of Truelson's statutory-maximum penalty as a risk-level-III offender who violated registration requirements. *Id.* at 596. The risk-

5

level-III status is analogous to the fact of a prior conviction or probation status, and the constitution does not require it to be determined by a jury. *Id.* Truelson's Sixth Amendment rights were therefore not violated when the district court imposed a ten-year conditional-release term without a jury finding on his risk level.

Truelson contends that we should disregard this precedent because the supreme court is currently reviewing *Ge Her.* He cites *In re Stilinovich*, 479 N.W.2d 731, 736 (Minn. App. 1992), where this court, relying on Rule of Civil Appellate Procedure 136.02, said that a court of appeals decision is not final until the petition for review is denied. But rule 136.02 only refers to a stay of the entry of judgment when the supreme court grants review; it does not address the precedential value of the rule of law announced in a published opinion. Even though an opinion may not be "final," this court typically follows the rule of law announced in a published opinion, even one subject to further review, until the Minnesota Supreme Court announces a different rule of law. *See State v. M.L.A.*, 785 N.W.2d 763, 767 (Minn. App. 2010) (stating that we are "bound by supreme court precedent and the published opinions of the court of appeals"), *review denied* (Minn. Sept. 21, 2010).

## II.

At the sentencing hearing, the district court ordered Truelson to pay a $75 surcharge, a $15 library fee, and a $75 public defender co-payment for each of the three complaints to which he pleaded guilty. Truelson argues that the district court's order violates the governing statutes, contending that those statutes only allow the district court to order him to pay one set of costs. The state counters that the plea agreement concerned

6

three separate cases, and the district court could accordingly, in its discretion, impose costs three times.

Both parties argue that the plain language of the statutes supports their arguments. This court reviews questions of statutory interpretation de novo. *State v. Gaiovnik*, 794 N.W.2d 643, 646 (Minn. 2011). Three statutes are at issue here. The first statute requires a surcharge:

> [T]he court shall impose and the court administrator shall collect a $75 surcharge on every person convicted of any felony, gross misdemeanor, misdemeanor, or petty misdemeanor offense . . . . When a defendant is convicted of more than one offense in a case, the surcharge shall be imposed only once in that case.

Minn. Stat. § 357.021, subd. 6(a) (2014). The next statute permits the district court to impose a library fee on a defendant, but states "[w]hen a defendant is convicted of more than one offense in a case, the county law library fee shall be imposed only once in that case." Minn. Stat. § 134A.10, subd. 3 (2014). The final statute states that "an individual who has received public defender services shall pay to the court a $75 co-payment for representation provided by a public defender," unless the co-payment is reduced or waived by the court. Minn. Stat. § 611.17(c) (2014).

"When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn. Stat. § 645.16 (2014). Words are construed "according to their common and approved usage." Minn. Stat. § 645.08(1) (2014). A dictionary may

7

help ascertain a word's common and approved usage. *See State v. Schmid*, 859 N.W.2d 816, 820-21, 824 (Minn. 2015) (using the American Heritage Dictionary to define terms).

Black's Law Dictionary defines a case as "[a] civil or criminal proceeding, action, suit, or controversy at law or in equity." *Black's Law Dictionary* 243 (9th ed. 2009). A criminal proceeding begins each time the state files a complaint against a defendant. *See* Minn. R. Crim. P. 1.06, subd. 1 (stating that a "charging document" is a complaint, indictment, citation, or tab charge). A new case begins each time the state files a criminal complaint. Here, the state filed three separate complaints against Truelson in August 2013, September 2013, and February 2014. Each complaint began a new criminal case concerning separate and distinct conduct.

Truelson argues that the three cases merged into one because of the manner in which they were resolved: Truelson dealt with all three cases as part of one plea negotiation; he filed one plea petition; he pleaded guilty to each of the three charges at the same hearing; and the district court imposed concurrent sentences for the three charges at one sentencing proceeding. Truelson does not cite any relevant legal authority for this position, however.[1] The district court dealt with the three cases at one hearing, likely for purposes of judicial economy or at the request of the attorneys, but that

---

[1] Truelson cites *State v. Montermini*, 819 N.W.2d 447, 454–55 (Minn. App. 2012), *review denied* (Minn. Nov. 20, 2012), for the proposition that a "plea agreement involving a package deal resolving multiple charges and uncharged conduct is treated as one case." *Montermini* dealt with a prosecutor vacating an entire plea agreement after the defendant successfully appealed one of the convictions. *Id.* at 452. The prosecutor was then able to bring certain charges that it had agreed not to pursue as part of the original plea agreement. *Id.* Thus, *Montermini* does not address the issue of costs; nor is it factually analogous so as to be useful.

treatment does not show that the cases were somehow merged into one. Rather, they remained three distinct cases, and the district court properly imposed costs in each criminal case in accordance with the governing statutes.

**Affirmed.**